

FILED
2021 Oct-25  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| P.M. a minor, by and through his Mother and next friend, KAREN F. MARTINE,   )<br>)<br>)<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>THE CITY OF WINFIELD, ALABAMA, a municipality   )<br>)<br>Defendant.   )<br>) | Case No. 6:19-cv-00623-LSC |

### MEMORANDUM OF OPINION

## I.     Introduction

Plaintiff P.M., a minor, by and through his mother and next friend, Karen Martine brings this action against the City of Winfield, Alabama ("City of Winfield"), alleging a violation of Title II of the Americans with Disabilities Act of 1990 ("the ADA"). Before the Court is Defendant's Motion for Summary Judgment. (Doc. 49.) The City of Winfield's motion is fully briefed and ripe for review. For the reasons described below, the City of Winfield's Motion for Summary Judgment is due to be GRANTED.

## II.     Facts

Plaintiff is a minor who has a right limb but no right hand.[1] (Doc. 56 at ¶ 1.) When he plays baseball, he switches his glove on and off his only hand, wearing his glove on his right limb while he throws with his left hand. (Doc. 25 at ¶ 11.) In Spring 2018, Plaintiff played on one of Defendant's youth baseball teams for nine- and ten-year-old boys, all of which are sponsored by Defendant's Park and Recreation Department ("the Department"). (*Id.* at ¶ 4.) Neal Box acted as a volunteer coach for the team during the relevant time. (*Id.* at ¶ 6.) On March 13, 2018, Box decided to try out nine players for the position of pitcher. (*Id.* at ¶¶ 9, 10.) Plaintiff was one of these players. (*Id.*) While the other boys who received a tryout threw over ten pitches, Plaintiff threw around five or six. (*Id.* at ¶ 13.) At the end of tryouts, Box informed Plaintiff, as well as other players, that he would not be selected as pitcher and instead be placed in the outfield. (*Id.* at ¶ 15.) Karen Martine, Plaintiff's mother, approached Box after learning her son was not selected as pitcher and asked Box to explain his choice. (*Id.* at ¶ 17) Box responded that if Plaintiff were pitching, he could not defend himself when a batter hits a "line drive" towards him. (*Id.*)[2] Karen recorded the entire conversation. (*Id.*)

---

[1] The Court gleans these "facts" from the parties' submissions of "undisputed facts" and the Court's examination of the record. These are "facts" for summary judgment purposes only. Their inclusion in this Memorandum of Opinion does not signal their veracity. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Plaintiff's third amended complaint defines a "line drive" as a "powerfully hit ball that travels in the air and relatively close to and parallel with the ground." (Doc. 25 at ¶ 14.)

John Martine, Plaintiff's father, subsequently purchased protective equipment for Plaintiff in response to the safety concerns expressed by Box. (*Id.* at ¶ 20) That same day, John texted Box asking if P.M. could try out using the new safety equipment, and Box replied that he had already chosen who would be pitching for the season. (*Id.* at ¶¶ 50-51.)

On March 14, 2018, Karen approached Gina Bryant, Park and Recreation Director, to complain about Box's discrimination against her son during the tryout for pitcher. (*Id.* at ¶ 18.) In response, Bryant told Karen that she and Charlotte Beasley, Park and Recreation Athletics Director, would attend the team's next practice. (*Id.*) Bryant also informed the Park and Recreation Board ("the Board") of the events, including that she would investigate and provide updates on the matter. (*Id.*)

Shortly before the next practice, Beasley and Bryant both talked to Box about the complaints against him, hearing his rationale for not selecting P.M. as pitcher. (*Id.* at ¶ 21.) Box said that P.M. was not selected because he could not consistently throw strikes and because he had trouble controlling his glove. (*Id.*) This was not communicated to Karen or John. (*Id.* at ¶ 43.) Beasley and Bryant stayed after the conversation to watch the team's practice. (*Id.* at ¶ 22.) The next day, Karen and John were given the opportunity to speak with both Beasley and Bryant in their

office, where the Martines elaborated on their complaint regarding Box's alleged discrimination. (*Id.* at ¶ 27.) A few days later, on March 22, 2018, the Martines sent a letter, the audio file of Karen's conversation with Box, text message screenshots, a receipt confirming the purchase of the P.M.'s new protective gear, and videos of P.M. pitching to Park and Recreation Chairman Chris Carothers as well as Beasley, Bryant, and the Mayor of the City of Winfield, Randy Price. (*Id.* at ¶ 29.)

The Board met on March 26, 2018, to address the complaint, where Beasley and Bryant presented the information they gathered regarding Box's conduct. (*Id.* at ¶ 31.) The Board ultimately determined that P.M. had received a tryout and had been treated fairly by Box. (*Id.*)

Plaintiff proceeded to play for the remainder of the 2018 baseball season. (*Id.* at ¶ 37.) However, P.M. did not play the 2019 season and was no longer interested in playing baseball for the Winfield Park league. (Doc. 25 at ¶ 25.)

## III.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[3] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists

---

[3] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.,* 780 F.3d 1039, 1049 (11th Cir. 2015).

"if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.,* 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.,* 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence presented. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L. Ed 2d 202 (1986). Instead, the trial court determines whether issues of fact remain and should be resolved at trial. *See Green v. Markovitch,* 385 F. Supp. 3d 1190, 1194 (N.D. Ala. 2019). Further, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## IV.   Analysis

   Defendant moves for summary judgment on all three of Plaintiff's remaining claims: Denial of Equal Enjoyment of Activities and Services, Failure to Make Reasonable Modifications and Auxiliary Aids, and Discrimination Based on Administrative Methods. The Court grants summary judgment on all claims.

## A.  Additional Claim

Defendant claims that the very essence of Plaintiff's complaint is untrue. (Doc. 49.) Defendant argues that Plaintiff's original complaint alleges P.M. never received a tryout at all and that the "number-of-pitches theory of discrimination" only arose during discovery and in response to Defendant's request for summary judgment. (*Id.*) The Court does not address Defendant's allegation that Plaintiff improperly asserted a new claim because, even if the Court agrees with Plaintiff that the claim is properly asserted, Defendant remains entitled to summary judgment for the reasons discussed below.

## B.  ADA Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must prove:

> "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion,

denial of benefit, or discrimination was by reason of the plaintiff's disability."

*Silberman v. Miami Dade Transit,* 927 F.3d 1023, 1034 (11th Cir. 2019) (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

### a. Qualified Individual with a Disability

Under Title II, a qualified individual with a disability is a person who has a qualified disability and who, "with or without reasonable modifications to rules, policies, or practices…or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. A "disability" is defined as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual," including an "anatomical loss affecting one or more body systems, such as: . . . musculoskeletal." 28 C.F.R. §§ 35.180(a)(1)(i); 35.180(b)(1)(i). It is undisputed that Plaintiff has only one hand, and thus would qualify as having a "disability" under the statute.

However, despite the undisputed nature of Plaintiff's disability, Defendant argues that, because the complaint addresses P.M.'s participation as a pitcher specifically, Plaintiff must meet the essential eligibility requirements to participate as pitcher. Plaintiff contends that P.M. meets the essential eligibility requirements under Title II simply because he met the eligibility requirements of Defendant's

baseball team during the relevant time. This Court, in its Memorandum and Opinion in response to Defendant's Motion to Dismiss, has previously found that the program in question is Defendant's baseball team rather than the pitcher position, which is a benefit of membership on the team. (Doc. 41 at 9.) Viewing all factual inferences in favor of Plaintiff, the Court finds that P.M. meets the essential eligibility requirements as required by the ADA. Therefore, the Court finds that Plaintiff is considered a qualified individual with a disability under Title II of the ADA.

### b. Exclusion from Participation or Denial of Benefits

A public entity may not "afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor can it limit such individuals "in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." 28 C.F.R. §§ 35.130(b)(1)(ii); 35.130(b)(1)(vii). A qualified individual does not have to be "completely prevented from enjoying a service, program, or activity" by the public entity to establish exclusion from participation or denied benefits in violation of the ADA. *See Shotz v.* Cates, 256 F.3d 1077, 1080 (11th Cir. 2001). Thus, Plaintiff need not show that he was completely denied an opportunity to participate on the team. Rather, Plaintiff must show that Defendant

limited or excluded him from opportunities afforded to and enjoyed by others on the team.

Plaintiff claims Defendant excluded him from the opportunity to try out for pitcher in two ways: (1) by denying him the same number of pitches as the other boys with two hands and (2) by not allowing the use of reasonable modifications when they were made available to Box.

### i.  Number of Pitches

Defendant claims that every player who tried out threw 15-20 pitches during the tryout. (Doc. 56 ¶ 13.) However, Plaintiff contends that he was only allowed five or six pitches before being denied the pitcher position. (*Id.*) Thus, Plaintiff has shown a genuine dispute as to whether his opportunity to try out for pitcher was limited regarding the number of pitches he was allowed to throw during his tryout.

### ii.  Reasonable Modifications

"A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *See also Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1081-1082 n.13 (holding that Title II does not include statutory language regarding reasonable

modifications; however, there are DOJ regulations imposed to avoid discrimination under Title II of the ADA). To be considered "reasonable," an accommodation must enable the qualified individual to perform the "essential functions" of his position. *Goldberg v. Fla. Int'l Univ.* 838 F. App'x 487, 492 (11th Cir. 2020). However, "[in] cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation." *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009).

Defendant states that Plaintiff's only request for modification was terminating Box from his position as volunteer coach for Defendant's team. (Doc. 49.) Plaintiff claims, however, that the request for Box's removal only came after denial of the initial request for reasonable modification—for Plaintiff to try out using the safety equipment purchased by John. (Doc. 56.) Defendant does not agree that allowing Plaintiff a second tryout with the pitching equipment would be reasonable, claiming a second tryout would not have been effective. (Doc. 49.) Defendant relies on John's testimony, stating that Plaintiff was throwing with the same accuracy a few days later as he had during his tryout. (*Id.*) Viewing all factual inferences in favor of the nonmovant, Plaintiff has shown a genuine dispute as to whether Plaintiff's first request was reasonable and whether Defendant's denial of said request is a violation

under the ADA. Therefore, Plaintiff has sufficiently shown a genuine dispute of material fact as to whether he was excluded from full participation in Defendant's program.

### c. Discrimination Based on Disability

To prove a violation under Title II of the ADA, a qualified individual must prove that the alleged discrimination occurred "by reason of [the individual's] disability." 42 U.S.C. § 12132. When analyzing the alleged discrimination, "[t]he ADA imposes a 'but-for' liability standard." *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996). Under this standard, the individual's disability need not be the sole reason for the alleged discrimination but must be "a factor that made a difference in the outcome." *Id.*

Defendant claims that the choice to not have Plaintiff play pitcher stemmed from Plaintiff's trouble with accurately throwing the ball. (Doc. 49 at ¶¶ 15, 21.) Plaintiff contends that Box, at least in part, did not choose Plaintiff for pitcher due to safety concerns stemming from Plaintiff only having one hand. (Doc. 56 at ¶ 17.) From Box's explanation to Karen, it can be inferred that Plaintiff's need to put his glove back on after throwing a ball left him more vulnerable than other boys on the

team and thus less likely to be chosen for pitcher.[4] Because a reasonable jury could find that Plaintiff's disability served as a but-for cause for his exclusion from the pitcher position, the Court finds that Plaintiff has shown a genuine dispute of material fact regarding whether the discrimination was based on Plaintiff's disability.

Based on the analysis above, this Court finds that Defendant failed to meet their burden of showing no genuine dispute of material fact regarding whether Plaintiff, a qualified individual with a disability, was excluded from participation in and denied benefits of Defendant's program by reasons of his disability.

## C. Discrimination Based on Administrative Methods

In Count III of Plaintiff's Third Amended Complaint, Plaintiff alleges discrimination based on Defendant's administrative methods. Defendant's motion does not appear to address this allegation at all. Thus, Defendant fails to meet their burden to show no genuine dispute of material fact regarding this issue.

## D. Relief Available

Though there is a genuine dispute of material facts, Plaintiff's claims fail at the relief stage. Plaintiff's initial complaint requested relief in the form of injunctive relief, punitive damages, and compensatory damages. Plaintiff's claims for injunctive

---

[4] This Court does not address the propriety of a coach's decision to place players at specific positions during the seasons. The Court addresses only whether a reasonable jury could find that Box's actions constituted a violation of Title II of the ADA based on all factual inferences being viewed in favor of Plaintiff.

relief and punitive damages were previously dismissed by this court. (Doc. 41.) Thus, only compensatory damages remain.

To receive an award of damages, the plaintiff "must prove that the entity he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)). Deliberate indifference occurs when "the defendant knew that harm to a federal protected right was substantially likely and . . . failed to act on that likelihood." *Liese,* 701 F.3d at 344 (quoting *T.W. ex. rel. Wilson v. Sch. Bd. Of Seminole Cty., Fla.,* 610 F.3d 588, 604 (11th Cir. 2010)). "[D]eliberate indifference plainly requires more than gross negligence." *Liese*, 701 F.3d at 344. Instead, this standard requires a "deliberate choice." *Id.* (citing *Loeffler v. Staten Island Uni. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009)).

Furthermore, "to hold a government entity liable, the plaintiff must demonstrate that an 'official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf' had 'actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond.'" *See Silberman*, 927 F.3d at 1134 (quoting *Liese*, 701 F.3d at 349). A qualifying official necessarily is "high enough up the chain-of-command that

[their] acts constitute an official decision by the [entity] not to remedy the misconduct." *Id.* (quoting *J.S., III by and through J.S. Jr. v. Houston Cty. Bd. Of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017)). That individual must have "substantial supervisory authority within an organization's chain of command [and]…complete discretion at a 'key decision point' in the administrative process." *Liese*, 701 F.3d at 350 (quoting *Doe v. Sch. Bd. Of Broward Cty., Fla.*, 604 F.3d 1248, 1256-57 (11th Cir. 2010)). A key decision point is a point in the administrative process where the decision is not ordinarily subject to a higher level of review. *Id.*

This Court has already determined that Box does not qualify as a "substantial supervisory authority." (Doc. 41.) However, the other named agents in the complaint—Beasley, Bryant, Carothers, and Price—qualify as "officials" for the purpose of determining whether Plaintiff may recover compensatory damages. (*Id.*) The Court must now determine, in light of discovery, whether any of the qualified agents acted with deliberate indifference. Discovery has shown that Plaintiff's parents notified the qualified agents of their discrimination claims either through an in-person meeting or through mail and email correspondence, proving that the agents knew of the alleged discrimination. (Doc. 56 ¶¶ 27-34.) Therefore, the only remaining question is whether any of the named agents failed to act on this information.

The Court finds that the qualified agents did not fail to act on Plaintiff's complaints. While Plaintiff claims the administrative methods and responses from each agent constitute failure to act, this Court disagrees. Plaintiff argues that Beasley, Bryant, and Carothers did not do enough when investigating the complaint from Karen and John, and thus they each failed to act. However, showing "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent" is not sufficient to show a failure to act. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Plaintiff concedes that the Board—including Beasley, Bryant, and Carothers—took several steps in response to the complaints from Karen and John. Beasley and Bryant both met with Box and the Martines about the complaint and subsequently attended a team practice. (*Id.*) The Board held several meetings where the complaint regarding Box was specifically addressed and investigated. (*Id.*) Despite Plaintiff acknowledging the actions taken by the Board, Plaintiff still contends that Carothers failed to act by not addressing the complaint outside of the steps taken by the Board. The Court disagrees. Because Carothers serves as the Chairman of the Board, actions taken by the Board as a whole are taken under the authority and guidance of Carothers, showing that Carothers did not fail to act. Therefore, while the measures taken by Beasley, Bryant, and Carothers could be

considered "inept, erroneous, ineffective, or negligent," this Court finds that these named agents did not fail to act.

Plaintiffs also argue that Mayor Price failed to act by failing to respond directly to the complaint about Box's alleged discrimination. As the chief executive officer of the City, the mayor is, in his official capacity, the agent of the City, through whom the City acts. *See* § 11-43D-14, Ala. Code 1975; *See also Dickinson v. City of Huntsville*, 822 So. 2d 411, 415 (Ala. 2001). Thus, Plaintiff claims that Price had the authority to implement corrective measures in response to the alleged discriminatory conduct. However, the City of Winfield created the Board pursuant to Alabama Code § 11-86-1. Defendant's creation of the Board inherently grants the Board the ultimate authority to direct and supervise the Department:

> "[I]t is clear that, once created, the park and recreation board is the ultimate authority with regard to programs . . . assigned for recreational purposes. Section 11-86-3 [of the Code of Alabama] repeatedly mentions the authority of the park and recreation board, but *this section never mentions any authority of a local governing body to supersede or approve decisions of the park and recreation board.*"

Ala. Op. Atty. Gen. No. 2007-076, 2007 WL 1289616 at *3 (Ala. A.G. Apr. 9, 2007) (emphasis added). Therefore, despite Price's position as the chief executive officer of the City of Winfield, Price lacked the statutory authority to supersede the decision of the Board regarding Box's conduct.

Because Plaintiff failed to show Defendant engaged in intentional discrimination, Plaintiff is not entitled to compensatory damages and summary judgment is due to be granted.

## V.  Conclusion

For the foregoing reasons, the City's Motion for Summary Judgment is due to be GRANTED. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on October 25, 2021.

_____
L. Scott Coogler
United States District Judge

206888